# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| Maurice Stephens, | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| vs. | ) | |
| Profit Services Group, LLC, | ) | **COMPLAINT WITH** |
| | ) | **JURY TRIAL DEMAND** |
| Defendant | ) | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

## PARTIES

1. Plaintiff Maurice Stephens is a natural person who resides in Chatham County, Georgia.

2. Defendant, Profit Services Group, LLC, is a Georgia limited liability corporation and can be served through its registered agent Tim Shaffer, 6602 Abercorn Street, Suite 202, Savannah, Georgia 31405.

1

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

5.      Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      Venue is proper in the Savannah Division because the conduct complained of herein occurred in Chatham County, Georgia.

## FACTUAL ALLEGATIONS

7.      Plaintiff is a 39-year-old-man with deteriorating health. He is disabled, unable to engage in competitive employment, and is in the process of obtaining disability insurance benefits through the Social Security Administration.

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of medical services and is, therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant is a collection agency specializing in the collection of consumer debt.

10. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. Defendant manages, and collects upon, thousands of consumer debt accounts annually.

12. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. The Plaintiff has fallen behind on a number of consumer accounts, mostly medical expenses, as a result of his disability and continuing medical care.

14. In August, 2022, the Plaintiff obtained a copy of his credit report as published by Transunion and Equifax, two major credit reporting bureaus.

15. In reviewing these reports, he noted a tradeline being reported by the Defendant which he did not recognize. The tradeline indicated that Defendant was collecting a debt on behalf of Georgia Emergency Physicians in the amount of

$334.00. The information reported by the Defendant indicates that the account arose from services provided in 2016.

16. In an effort to obtain more information about the account, the Plaintiff initiated a call to the Defendant on August 29th, 2022.

17. At that time, he was connected with an individual identifying himself as a representative of the Defendant. After confirming the Plaintiff's identity, the Defendant confirmed that it was collecting a debt in the amount of $358.00.

18. The Defendant went on to advise the Plaintiff that it had recently received a number of additional accounts to be collected from the Plaintiff. Most of these, according to the Defendant, also arose from emergency room visits.

19. Included among these additional accounts was a second charge incurred by the Plaintiff on June 24th, 2015 in the amount of $334.00. This account, per the Defendant, had not yet been reported to the Plaintiff's credit file but would be as of September 1st, 2022.

20. Another debt now in collection but yet to be reported arose from treatment rendered on December 16th, 2015, again in the amount of $334.00. It, too, per the Defendant, was scheduled to report on September 1st, 2022.

21. All of the scheduled reporting of these negative accounts could be avoided, per the Defendant, if the Plaintiff either "settled" the accounts or entered

into a payment arrangement with the Defendant. The Defendant further advised the Plaintiff that if he chose to "settle" the accounts, he could do so at a reduced amount from the total.

22. The Defendant then went on to represent to the Plaintiff that if these accounts reported, he would see an immediate drop in his credit score using the example of a 30-point drop for each account. Thereafter, per the Defendant, if he began making payments per some monthly arrangement, he could recapture those points, but very slowly over time.

23. The total being collected by the Defendant was $1,141.16.

24. Based on his personal experience and the ordinary usage of the term "settle" related to his other consumer debt the Plaintiff understood this to mean that the claim being collected by the Defendant was in suit or subject to suit thus generating a "settlement offer".

25. The accounts in collection with the Defendant is subject to a statute of limitations of no more than four years per O.C.G.A § 9-3-26.

26. Upon information and belief, the statute of limitations applicable to the Defendant's claims expired no later than December 15th, 2019.

27. A communication from a creditor offering a "settlement" on a debt that is time-barred creates confusion about a creditor's right to sue and violates §

1692e(2)(A).  *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015) *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016)

28. An offer to 'resolve' a time-barred debt, combined with a deadline to accept the reduced-payment offer and a warning that the offer might not be renewed if payment is not timely made has been found to plausibly deceive or mislead an unsophisticated consumer as to the legal status of the debt, even in the absence of an express threat of litigation. *Holzman v. Malcolm S. Gerald & Associates, Inc.*, 920 F.3d 1264, 1271 (11th Cir. 2019)

29. Accordingly, the Defendant's claim is not subject to enforcement through legal action. Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status. *See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1260 (11th Cir. 2014)* (explaining the significance to debtors of statutes of limitations in determining a debt's legal status), *cert. denied*, 135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015).

30. Under Georgia law, were the Plaintiff to make a partial payment via a writing acknowledging the debts, a check or money order for example, it could have the effect of reviving what is currently an expired statute of limitations thus exposing the Plaintiff to legal action on the debt.

31. At no time during their communications did the Defendant advise the Plaintiff that the applicable statute of limitations had expired or that it could be revived as a result of Plaintiff complying with its requests to begin partial payments.

32. Credit reporting is governed by the 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act (FCRA).

33. The FCRA mandates that consumer credit information may be reported for only seven (7) years from the date of first delinquency. 15 U.S.C. § 1681c(a)(4).

34. Upon information and belief, the date of first delinquency for the accounts in collection by the Defendant was June, 2015.

35. Based upon the statements and representation from the Defendant, at least two of the accounts which were threatened to be reported on September 1st, 2022 are not in fact subject to reporting at all as a matter of law.

36. The representations of the Defendant drove the Plaintiff to expend a significant amount of time trying to raise enough money to take advantage of the "settlement" and avoid both legal action and negative credit reporting.

## INJURIES-IN-FACT AND DAMAGES

37. The FDCPA provides consumers with statutorily created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016

U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

38. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

39. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

40. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, and unfair debt collection practices;

b.) Confusion related to the Defendant's credit reporting practice that adversely impacted the Plaintiff's ability to prioritize debt payments when they were possible;

c.) Uncompensated time expended away from activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

d.)     Anxiety and worry caused by concern that Plaintiff was "missing out" on a substantial settlement opportunity that would leave him subject to legal process. and,

e.)     Anxiety and worry caused by concern that Plaintiff was on the verge of having his credit rating severely impaired via reporting that would, in fact, be unlawful. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect his demeanor, his ability to engage in daily activities, resulted in sleeplessness, and adversely affected his relationships with others.

41.     Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692 et. seq.**

*Violations of 15 U.SC. § 1692e and its subparts*

42.     15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

43. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

44. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e). Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

45. "Violations of Section 1692e are viewed from the perspective of the "least sophisticated consumer." *National Financial Servs.*, 98 F.3d at 135-36. "[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles." *Id.* at 136. The purpose of that standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 *quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1983). Indeed, its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

46. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

47. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

48. Defendant's representations or implications that led Plaintiff to believe that he may be subject to legal process in connection with the debt in collection was objectively false and or materially misleading as most, if not all, are time-barred. Defendant's representations or implications were a violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

49. Although this nondisclosure is itself sufficient to violate the FDCPA, the letters go one step further by asking the consumer to "settle" his or her account. Such settlement offers serve only to compound confusion over the debt's true character or legal status, as a consumer researching what "settlement" means would reasonably find the dictionary's definition of the term: "an act of bestowing or giving

possession under legal sanction." *Settlement*, Merriam-Webster, *http://www.merriam-webster.com/dictionary/settlement* (last visited November 1, 2020); *see also Settlement*, Black's Law Dictionary (10th ed. 2014) (defining the term to mean "[a]n agreement ending a dispute or lawsuit"). Consequently, the dunning letter in this case is misleading by failing to disclose that the debt it seeks to collect is time-barred and by giving the false impression that Defendant could sue to enforce the debt. *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016).

50. Defendant's representations and entreaties were a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10). *See*, *Lopera v. Midland Credit Mgmt., Inc.*, 2016 WL 6650744 (M.D. Fla. Nov. 10, 2016) (denying dismissal of §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f claims based on letter offering to "resolve your unpaid" debt through payment plan, without disclosing that statute of limitations could be revived by partial payment or agreement to pay). *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016) (regardless of whether litigation is expressly threatened, offering to "settle" time-barred debt, without explaining that debt is not enforceable, can violate §§ 1692e and 1692f).

51. The Defendant's representations regarding its intention to report delinquent account information that cannot lawfully be reported was a violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

***Violations of 15 U.SC. § 1692f and its subparts***

52. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon the perceived lack of sophistication of the Plaintiff.

53. Defendant's conduct violated 15 U.S.C. § 1692f.

## TRIAL BY JURY

54. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

d) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a); and

e) Such other and further relief as may be just and proper.

Respectfully submitted this 7th day of February, 2022.

[Signatures follow]

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*

14